IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| vs. | ) ) ) CRIMINAL NO. 1:12-38 |
| SHANTELL LAMONT JONES, | ) |
| Defendant. | ) |

AMBROSE, United States Senior District Judge

## MEMORANDUM ORDER OF COURT

**I. Introduction**

Defendant has filed a Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), as Amended by the First Step Act of 2018. [ECF No. 113]. He seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). He contends that his medical conditions render him particularly susceptible to the COVID-19 virus while incarcerated at the USP Lewisburg satellite prison camp. Id. The Government has filed a Response in Opposition [ECF No. 116], and Defendant filed a Reply as well as selected medical records. [ECF Nos. 114, 117]. After careful consideration of the submissions, and for the reasons set forth below, Defendant's Motion is denied.

**II. Background**

In July, 2012, Defendant was indicted and charged with two counts of possession with intent to distribute and distribution of less than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). [ECF No. 1]. According to the presentence investigation report, Defendant was on probation for a prior conviction in the Erie County Court of Common Pleas at the time of his violation. Defendant pled guilty to both counts of the Indictment on October 16, 2012. [ECF No. 25]. On March 13, 2013, the Court sentenced Defendant to 168 months of

1

incarceration to be followed by 3 years of supervised release. [ECF No. 34]. Defendant is incarcerated at USP Lewisburg satellite prison camp with a projected release date of July 20, 2024.[1]

## III. Analysis

Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons could seek a reduction of sentence. United States v. Handerhan, 789 F. App'x 924, 925 (3d Cir. 2019). Section 603(b) of the First Step Act, entitled "Increasing the Use and Transparency of Compassionate Release," permitted prisoners the right to file compassionate release motions with the court "so long as they first ask the BOP to file a motion on their behalf and then either exhaust the BOP's administrative appeal process or wait 30 days, whichever comes first." United States v. Somerville, 12cr225, 2020 WL 2781585, at * 2 (W.D. Pa. May 29, 2020) (citing 18 U.S.C. § 3582(c)(1)); First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). The First Step Act thus empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). The statute provides that:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i)  extraordinary and compelling reasons warrant such a reduction….

---

[1] The Federal Bureau of Prisons website lists Defendant's projected release date as July 20, 2024. See https://www.bop.gov/inmateloc/. Defendant represents in his reply brief that he could be released as early as February, 2022. [ECF No. 117, at 15].

> And that such a reduction is consistent with the applicable
> policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). Because the Defendant has exhausted his administrative remedies, I turn to a consideration of whether, after considering the factors set forth in section 3553(a), the Defendant has established "extraordinary and compelling reasons" in support of compassionate release."[2]

The Sentencing Commission issued a policy statement related to § 3582(c)(1)(A). It provides, in part, that: "the court may reduce a term of imprisonment … if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13. The policy statement then identifies four categories of "extraordinary and compelling reasons." They consist of: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) other reasons as determined by the Director of the Bureau of Prisons. U.S.S.G. 1B1.13 Cmt., App. Note 1(A)-(D).

The Application Notes to the policy statement recognize that "extraordinary and compelling reasons" may exist based on the defendant's medical condition. That is, extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition, which substantially diminishes his ability to provide self-care within the correctional facility and from which he is not expected to recover. U.S.S.G. 1B1.13, Cmt., App. Note 1(A)(ii). Here, Defendant contends that his diagnosed medical conditions, including asplenia (removed spleen), and a history of hypertension, high cholesterol, unspecified liver disease, and excessive weight with pre-diabetes, coupled with the ongoing COVID-19 pandemic, satisfy this requirement. [ECF No. 113, at 16].

---

[2] Before a prisoner can file a compassionate release motion, administrative rights must be exhausted. The Government concedes that the Defendant has exhausted his administrative remedies and that his motions are ripe for consideration. [ECF No. 116, at 3-4 & n.1].

Although I certainly am sympathetic to Defendant's medical conditions, I find that those conditions, either alone or in combination, are not serious enough in nature to warrant release. Defendant does not contend that his conditions in and of themselves constitute an extraordinary and compelling reason for release, but that those conditions render him vulnerable to COVID-19 infection. [ECF No. 113, at 16-23]. As to asplenia, Defendant asserts that his removed spleen renders him immunocompromised; however, he has not offered evidence indicating that a splenectomy increases the risk of viral infections, such as SARS-CoV-2. The Government agrees that anyone without a spleen should be extra vigilant in following CDC recommendations to protect themselves and others, but they also note that there is no current data supporting a link between asplenia and increased vulnerability to COVID-19. To the contrary, a Harvard Health publication to which both parties cite states that, while nothing is certain:

> For most viruses, not having a spleen does not seem to be a major risk factor for illness.
>
> So far this seems to be true for COVID-19 as well. New studies are being published constantly, but lack of a spleen has not been identified as a risk factor for acquiring COVID-19 or having worse outcomes. This is likely because the other lymphoid tissues in the body are able to produce an adequate response.

See id. (citing https://www.health.harvard.edu/blog/no-spleen-what-you-need-to-know-to-stay-healthy-2020042419641). Further, Defendant has not shown that he has suffered unusually from infections due to compromised immunity while incarcerated.

With respect to hypertension, the Government notes that while "pulmonary hypertension" (high blood pressure in the lungs) is identified by the CDC as a condition causing "higher risk for severe illness from COVID-19," regular hypertension (high blood pressure) is not. [ECF No. 116, at 8-9, and citations therein)]. The Government points out that Defendant's medical records indicate that his high blood pressure is controlled by medication and cites numerous cases rejecting high blood pressure as an extraordinary and compelling reason for release. See id. and cases cited therein. Defendant admits that there are conflicting reports and general uncertainty

as to the effect of hypertension on COVID-19 vulnerability. [ECF No. 113, at 19-20]. He argues, however that, given the "high stakes" involved, the Court should take the approach that best protects Defendant's health. [ECF No. 113, at 19-20].

Defendant does not provide a detailed analysis of his other alleged medical conditions, but he argues that his "combination of serious medical issues makes it likely that he would be in grave danger were he to contract the virus." To merit compassionate release, however, Defendant must show more than mere speculation of the possibility of contracting the virus. See, e.g., United States v. Fry, 2020 WL 1923218 (D. Minn. Apr. 21, 2020); United States v. MacKenzie, 2020 WL 2104786 (D. Mass. May 1, 2020). As set forth above, Defendant does not appear to have a condition that the CDC has identified as a significant risk factor and his records indicate his conditions are effectively controlled with treatment. There also is no indication that he lacks access to appropriate care in prison. The mere possibility that Defendant may contract the virus and be more susceptible to complications if he does so is simply not enough to demonstrate extraordinary and compelling circumstances supporting release in this case.

Similarly, in considering Defendant's medical conditions in combination with the impact of the COVID-19 pandemic on correctional facilities, I am unable to find that such combination of concerns warrants compassionate release here. In United States v. Raia, the Court of Appeals for the Third Circuit held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's . . . extensive and professional efforts to curtail the virus's spread." 954 F.3d 594, 597 (3d Cir. 2020). In other words, a defendant's motion for compassionate release based in part on COVID-19 concerns must move beyond "citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak." United States v. Graham, No. 12-cr-184, 2020 WL 3053106, at *4 (W.D. La. June 8, 2020) (citing Raia).

Here, Defendant has failed to differentiate his COVID-19 related concerns from those of other inmates or to explain how his specific situation in light of the pandemic rises to an "extraordinary and compelling" level. As previously stated, nothing in the record indicates that Defendant has not received adequate care for his medical conditions at the Lewisburg camp as a result of the ongoing pandemic. Moreover, he fails to address the significant efforts the BOP has taken to protect inmates from COVID-19, and particularly at USP Lewisburg. The BOP has a detailed plan implementing modified operations in order to mitigate the spread of COVID-19, including suspending social visits, limiting inmate movement, screening staff and inmates, and modifying operations to maximize social distancing. See https://www.bop.gov/coronavirus/covid19_status.jsp. Although some federal prisons have nevertheless seen significant cases of COVID-19 within their facilities, as of July 8, 2020, USP Lewisburg has had only one reported case involving a staff member who has since recovered. No inmates have been diagnosed with COVID-19 at the facility, and testing has indicated that none of the inmates or staff there currently have the virus. See https://www.bop.gov/coronavirus/; see also United States v. Catanzarite, No. 18-0362(ES), 2020 WL 2786927 (D.N.J. May 29, 2020) (detailing COVID-19 policies and procedure at the USP Lewisburg satellite camp and finding that Defendant's health in combination with the conditions at USP Lewisburg did not constitute extraordinary and compelling reasons for compassionate release); United States v. Kupa. No. 11-0345, 2020 WL 2404856, at *2 (E.D.N.Y. May 12, 2020) ("The[] statistics [at USP Lewisburg] alone provide a compelling reason to deny the defendant's motion.").

In short, although I am sympathetic to Defendant's concerns for his health and safety, these concerns at this moment in time are too generalized to be considered "extraordinary and compelling" for purposes of compassionate release. Accordingly, compassionate release is denied.[3]

---

[3] The Application Notes to § 1B1.13 of the Guidelines also state that "other reasons" might warrant compassionate release. U.S.S.G. § 1B1.13, cmt. n(1)(D). Because this Guideline provision has not been

Even if "extraordinary and compelling" reasons did exist, I find that release of Defendant at this time is inappropriate in light of the factors set forth in § 3553(a).

Generally, once a court finds that an "extraordinary and compelling" reason may warrant release, it also must consider whether release is appropriate in light of the factors set forth under § 3553(a). Specifically, in considering the section 3553(a) factors, [the Court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." United States v. Bess, No. 16-156, 2020 WL 1940809, at *10 (W.D.N.Y. Apr. 22, 2020). As the Court of Appeals for the Third Circuit recently affirmed, whether to reduce an eligible defendant's term of incarceration for compassionate release after considering the § 3553(a) factors is committed to the discretion of the Court. See United States v. Pawlowski, No. 20-2033, 2020 WL 3483740, at *2 (3d Cir. June 26, 2020).

In short, I find here that release is unjustified given the nature, circumstances and seriousness of Defendant's offense, Defendant's history and characteristics, and the needs for protection of the public, just punishment, and deterrence. When Defendant requested a downward departure at sentencing, the sentencing judge, who had access to all of Defendant's background information, denied it, stating that Defendant is "the quintessential career offender." United States v. Jones, 552 F. App'x 185 (3d Cir. 2014). Even if Defendant had not been designated a career offender, he had 15 prior criminal history points and would have had a criminal history category of VI. As outlined in the Government's opposition, Defendant has a long history of criminal behavior since age 18 with most gaps in that behavior occurring only during times of incarceration.

---

updated since the enactment of the First Step Act, there is a dispute as to whether a court may define what fits into the "other reasons" category, or if such determination is left to the BOP. See United States v. Hammond, Criminal No. 18-184, 2020 WL 2126783, at *4 n.5 (W.D. Pa. May 5, 2020). However, even if I were to consider Defendant's Motion under the "other reasons" category, Raia's holding still forecloses relief. As stated above, Defendant's situation – as currently before me – remains too generalized and speculative in nature to rise to an "extraordinary and compelling" level. This conclusion stands whether I view Defendant's situation under the "illness" category or under the "other reasons" category.

[ECF No. 116, at 14-15]. In addition to multiple drug offenses, Defendant's past offenses include simple assault, carrying a firearm without a license, reckless endangerment, receiving stolen property, and driving under the influence. See id. Significantly, when he committed the offense at issue in this case at age 40, Defendant was under court supervision in another case.

In light of the above, I cannot confidently conclude that additional incarceration is unnecessary to prevent Defendant from committing further offenses or to protect the public from such. Rather, I find that his sentence remains sufficient, but not greater than necessary, to meet all of the goals of sentencing. Accordingly, I find that, in addition to the lack of "extraordinary and compelling" reasons, the § 3553(a) factors similarly weigh heavily against compassionate release.

THEREFORE, this 8th day of July, 2020, it is ordered that Defendant's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), as Amended by the First Step Act of 2018, [ECF No. 113] is DENIED.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose
United States Senior District Judge